This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**WELLS FARGO FINANCIAL NEW MEXICO, INC.,**

Plaintiff-Appellant,

v.                                                                    **A-1-CA-36213**

**DAMIAN RAMIREZ; OLMEDO F. RAMIREZ JR.; DOROTHY RAMIREZ; THE STATE OF NEW MEXICO DEPARTMENT OF TAXATION & REVENUE; AMERICAN INVESTMENT BANK, N.A.; CREDIT ACCEPTANCE CORPORATION; SUN RIVER ENERGY, INC.; and COLFAX COUNTY TREASURER,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY**
**Emilio J. Chavez, District Judge**

McCarthy & Holthus, LLP
Joshua T. Chappell
Karen Weaver
Albuquerque, NM

for Appellant

Eric Ortiz & Associates
Eric N. Ortiz
Albuquerque, NM

for Appellee Damian Ramirez

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Plaintiff Wells Fargo Financial New Mexico, Inc., appeals the grant of Defendant Damian Ramirez's motion to dismiss with prejudice pursuant to Rule 1-041E(1) NMRA. We reverse.

**BACKGROUND**

**{2}** The underlying facts of this case are not in dispute. On July 2, 2012, Plaintiff filed a complaint for foreclosure against Defendant, and his "unknown" spouse alleging that Defendant's mortgage loan was in default.[1] Plaintiff timely served summonses on all the parties on or before July 24, 2012. On July 25, 2012, Defendant filed a pro se answer. Defendant did not deny the allegations in Plaintiff's complaint but stated that he was "currently working with an attorney handling [his m]odification" to resolve the matter. He further stated that he needed "more time to continue working with [his] [a]ttorney and [his l]ender to secure a mutually beneficial outcome."

**{3}** Approximately three months later, after receiving notice that Defendant was unmarried, Plaintiff filed a stipulated motion to dismiss Defendant's "unknown" spouse. No further action took place in the case until January 8, 2015, when

---

[1] The complaint named other defendants in addition to Defendant and his "unknown" spouse. We address only the issues pertinent to Defendant.

substituted counsel filed an entry of appearance on behalf of Plaintiff. It appears that at some point in mid-2015, a new judge was assigned to this matter and nothing further took place until February 6, 2016, when the district court sent the parties a notice of status conference for April 28, 2016. Counsel for Defendant entered their appearance on February 16, 2016, and, a week later, filed a motion to dismiss with prejudice. In the motion, Defendant argued that Plaintiff's failure to take significant action for more than two years after filing its complaint required the court to dismiss the action with prejudice under Rule 1-041(E)(1) NMRA. Shortly thereafter, Plaintiff filed a request for a scheduling order pursuant to Rule 1-016(B) NMRA, and, on the same day, served discovery requests on Defendant.

{4}     On April 11, 2016, Plaintiff filed its response to Defendant's motion to dismiss. Plaintiff first argued that it had put Defendant's file on hold on October 30, 2014, in order to conduct an audit and ensure compliance with a federal consent order (the consent order) between its parent company, Wells Fargo Bank, N.A. (Wells Fargo) and the Board of Governors of the Federal Reserve System (FRS). In support of its response, Plaintiff attached a copy of the consent order, as well as the affidavit of Paula Chin, Vice President of Wells Fargo. Chin's affidavit explained that the Consent Order required Wells Fargo to establish two remedial plans, Remedial Plan A and Remedial Plan B. Remedial Plan A, as relevant here, allowed certain borrowers to file claims seeking compensation if they had

3

"suffered economic harm as a result of being approved for larger loans or for loans that should not have been approved." On August 1, 2013, notice was mailed to Defendant explaining that, beginning June 1, 2013 through December 31, 2015, his loan was eligible for review under Remedial Plan A. Plaintiff then placed Defendant's foreclosure action on hold during this period to allow Defendant time to file his claim and, if he did, to determine whether "borrowers who may be eligible for compensation were able to cure delinquencies by such compensation." The consent order further provided that if the borrower's home was prematurely foreclosed on, the remedial plan's decisionmaker "shall provide an additional amount up to $7,000 in appropriate remedial compensation[.]" Defendant never filed a claim under the remedial plan before the December 31, 2015 deadline. Consequently, Plaintiff did not resume its foreclosure action against Defendant until the remedial plan claims period ended.

{5}     In addition to arguing that placing Defendant's file on hold due to the consent order excusably prevented Plaintiff from prosecuting this action, Plaintiff also argued that the district court should properly consider as timely, actions taken between the time of the filing of the motion to dismiss and the motion hearing. Citing *Sewell v. Wilson*, 1982-NMCA-017, ¶ 32, 97 N.M. 523, 641 P.2d 1070, Plaintiff noted that it had released its file from hold, requested a scheduling order, and propounded discovery upon Defendant. Defendant did not dispute any of

4

Plaintiff's factual assertions in his reply and argued only that the consent order was not a sufficient justification for the delay.

{6}    At the status conference on April 28, 2016, the district court raised the outstanding motion to dismiss. Plaintiff again advised the court that it put its action on hold due to the consent order and indicated that it was now willing and able to proceed with the case. Plaintiff also stated that it was preparing a summary judgment affidavit and expected to file a motion for summary judgment within the next thirty days. The court set a hearing on Defendant's motion to dismiss for June 15, 2016. The district court and the parties agreed that if Defendant's motion were denied, the scheduling conference would be held that same day.

{7}    Plaintiff filed a notice on June 9, 2016, advising the district court that it was engaged in "active loss mitigation" with Defendant, and that federal regulations prevented it from proceeding with the foreclosure action until completion of the loss mitigation review. On July 11, 2016, the court held a hearing on the motion to dismiss, and the parties renewed the arguments made in their briefs. The district court took the matter under advisement and, on August 2, 2016, issued an order granting Defendant's motion to dismiss with prejudice. The basis for the decision was that Plaintiff failed "to take any significant action to bring [the] claim to trial or other final disposition within two (2) years from the filing of such action or claim without good cause or excusable delay." Plaintiff filed a motion for

reconsideration, which the district court also denied after holding another hearing. This appeal followed.

**DISCUSSION**

**{8}** We review a dismissal for lack of prosecution pursuant to Rule 1-041(E)(1) for an abuse of discretion. *Summit Elec. Supply Co. v. Rhodes & Salmon, P.C.*, 2010-NMCA-086, ¶ 6, 148 N.M. 590, 241 P.3d 188. The district court abuses its discretion when it "exceeds the bounds of reason, all the circumstances before it being considered." *Id.* (internal quotation marks and citation omitted). "Abuse of discretion has been found where dismissal results in an injustice and special circumstances impeded [a] plaintiff's prosecution of his claim, or where a claim is being pursued actively after a prior lapse in activity." *Sewell*, 1982-NMCA-017, ¶ 38.

**{9}** Rule 1-041(E)(1) provides, "Any party may move to dismiss the action . . . with prejudice if the party asserting the claim has failed to take any significant action to bring such claim to trial or other final disposition within two (2) years from the filing of such action or claim." Before granting a motion to dismiss pursuant to Rule 1-041(E)(1), the district court should determine (1) whether the plaintiff took timely, significant action to bring his or her claim to an end and, if not, (2) whether the plaintiff was excusably prevented from taking such action. *See State ex rel. Reynolds v. Molybdenum Corp. of Am.*, 1972-NMSC-027, ¶ 24, 83

6

N.M. 690, 496 P.2d 1086. "[A] court may, in its discretion, consider as timely, activities occurring between the filing of the motion and the hearing on it." *Sewell*, 1982-NMCA-017, ¶ 36. The court should make its determination on the basis of the court record and matters presented at the hearing on the motion to dismiss. *See Reynolds*, 1972-NMSC-027, ¶ 24. The district court must take into consideration

> 1) all written and oral communications between the court and counsel; 2) actual hearings by the court on motions; 3) negotiations and other actions between counsel looking toward the early conclusion of the case; 4) all discovery proceedings; and 5) any other matters which arise and the actions taken by counsel in concluding litigation.

*Jones v. Montgomery Ward & Co.*, 1985-NMSC-062, ¶ 10, 103 N.M. 45, 702 P.2d 990. There is no fixed standard of what action is sufficient to satisfy the requirement of Rule 1-041, and each case is determined upon its own particular facts and circumstances. *See Stoll v. Dow*, 1986-NMCA-134, ¶ 11, 105 N.M. 316, 731 P.2d 1360; *see also Summit Elec. Supply Co.*, 2010-NMCA-086, ¶ 13 ("New Mexico cases have previously declined to outline precisely what action is sufficient to satisfy Rule 1-041(E)(1)."). "Rule 1-041(E) is intended to promote judicial efficiency and to conclude stale cases, but it should not be applied in complete disregard of this [C]ourt's often stated concerns for the rights of litigants to have their day in court and their cases decided on the merits and not on trivial technicalities." *Summit Elec. Supply Co.*, 2010-NMCA-086, ¶ 14 (internal quotation marks and citation omitted).

{10}     Here, Plaintiff contends the district court abused its discretion in granting Defendant's motion to dismiss and denying Plaintiff's motion for reconsideration because (1) Plaintiff's need to comply with the consent order excusably prevented it from proceeding with the claim, and (2) its actions taken after the filing of the motion to dismiss constituted timely, significant action. We agree that Plaintiff was excusably prevented from proceeding with its claim from June 1, 2013 until December 31, 2015, and that it demonstrated timely, significant action under Rule 1-041(E)(1). We begin with whether Plaintiff was excusably prevented from proceeding with its claim.

{11}     It is undisputed that Plaintiff was subject to the consent order entered into between Wells Fargo and FRS. As we have noted, the consent order required Plaintiff to establish a remedial plan that would provide compensation to eligible borrowers who may have suffered economic harm as a result of being approved for larger loans or for loans that should not have been approved. If a borrower was qualified to participate in the remedial plan and Plaintiff foreclosed on that borrower's home during the relevant time period, the consent order provided that Plaintiff would be exposed to an additional $7,000 penalty. Borrowers, such as Defendant, were allowed to apply for relief under the remedial plan from June 1, 2013 until December 31, 2015. Plaintiff sent Defendant a notice informing him of his potential eligibility for compensation under the remedial plan. Defendant never

8

applied and thus, Plaintiff was forced to either proceed with the foreclosure action during the remedial plan period—and face a potential $7,000 penalty—or wait for the period to end. In light of this dilemma, we conclude Plaintiff was excusably prevented from proceeding with its foreclosure action from June 1, 2013 to December 31, 2015. The district court erred in concluding that Plaintiff did not present "good cause or excusable delay" during this time period.

{12}    Defendant argues that Plaintiff is simply using the consent order as an excuse for its failure to prosecute the case and that it should have filed a motion to stay or informed Defendant of its "deliberate decision to place its foreclosure actions on hold between June 2013 and December 2015." We are not persuaded. Defendant did not present any evidence of impropriety on the part of Plaintiff, nor did Defendant provide any evidence that the delay was intentional or for the purposes of delay. On the other hand, Plaintiff presented uncontested evidence— through Ms. Chin's affidavit—that it placed its foreclosure activities on hold specifically to allow Defendant the opportunity to apply to the remedial plan. While it may have been prudent for Plaintiff to inform Defendant and the district court it was placing its foreclosure action on hold, Defendant cites no case requiring Plaintiff to do so and we are aware of none. "[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no

9

cited authority, we assume no such authority exists." *State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129.

{13} We also conclude that the district court erred in failing to consider the action taken by Plaintiff once the potential review and appeal processes under the remedial plan were no longer at play. While Plaintiff arguably did not take significant action until Defendant filed his motion to dismiss, the district court should have taken into account all of Plaintiff's actions prior to the date of the motion hearing in July 2016. Plaintiff filed its complaint on July 2, 2012, and after dismissing Defendant's "unknown" spouse on September 7, 2012, did not take any further substantive action in the district court for more than two years. However, this is not to say that Plaintiff did not take any action during this period. *See Jones*, 1985-NMSC-062, ¶ 10 ("Many factors must be considered by the district court in ruling on a motion to dismiss pursuant to Rule [1-041(E)], *whether or not they are made a part of the court file*." (emphasis added)). It is undisputed that Plaintiff sent Defendant a notice of potential eligibility for the remedial plan on August 1, 2013. Defendant could have applied to the remedial plan and possibly cured his mortgage loan delinquency with the plan's compensation, negating the need for this litigation. Plaintiff kept its foreclosure activities on hold to give Defendant the opportunity to apply to the remedial plan. However, Defendant never applied. In

addition to sending notice of the remedial plan, Plaintiff's substituted counsel entered their appearances on January 8, 2015.

{14} In early February 2016, the district court sent a notice to the parties setting a status conference in the case. Although counsel for Defendant entered their appearance after the district court scheduled the status conference and shortly thereafter filed the motion to dismiss, Plaintiff filed a request for a scheduling order well in advance of the April 28, 2016 scheduling conference. A request for a scheduling order is, by definition, a request for a trial date. *See* Rule 1-016(B)(7) ("The scheduling order shall also include . . . a trial date not later than eighteen (18) months after the date the scheduling order is filed[.]"). Our appellate courts have held that a request for a trial setting filed after the filing of a motion to dismiss for lack of prosecution should be considered by the district court. *See Sewell*, 1982-NMCA-017, ¶ 36 ("Although the request for a trial setting in this case was filed after the motion to dismiss, it should be considered in determining the propriety of the dismissal."); *see also Jones*, 1985-NMSC-062, ¶ 13 ("[The plaintiff's request for a trial date], made after the defendant's first motion to dismiss but before the hearing on the motion, may nonetheless be considered."). Of course, "[t]his is not to say that a plaintiff can avoid dismissal by racing to the courthouse with a setting request after [the] defendant has moved under Rule [1-041(E)]. *Sewell*, 1982-NMCA-017, ¶ 36. However, there is no evidence to support

11

a conclusion that this is a case where a party slept on his rights only to stumble out of bed and up the courthouse steps upon the opposing party's sounding of the alarm.

**{15}** Our decision is bolstered by Plaintiff's other actions and representations prior to the motion hearing on July 11, 2016. Plaintiff served discovery requests on Defendant on April 4, 2016, indicating Plaintiff was ready to move forward with the litigation. *See Jones*, 1985-NMSC-062, ¶ 12 ("[D]iscovery should be considered along with other factors indicating activity to bring litigation to a final determination."). At the status conference on April 28, 2016, Plaintiff informed the court that it was preparing a summary judgment affidavit and expected to file a motion for summary judgment within the next thirty days. Additionally, on June 9, 2016, Plaintiff advised the court it was engaged in "active loss mitigation" with Defendant. We conclude these actions together demonstrate that Plaintiff was ready, able, and willing to move its case forward to a final disposition. As we have previously stated, the purpose of Rule 1-041(E)(1) is to promote judicial efficiency by concluding stale claims; not to deprive litigants of their right to have their case decided on the merits and not trivial technicalities. *See Summit Elec. Supply Co.*, 2010-NMCA-086, ¶ 14.

**{16}** Defendant argues that Plaintiff's actions did not constitute timely, significant action because it failed to take significant action prior to the filing of the motion to

12

dismiss. We agree that the failure to take significant action before the filing of a motion to dismiss under Rule 1-041 weighs in favor of dismissal; however, each case must be determined upon its own particular facts and circumstances, both before and after the motion is filed. *Stoll*, 1986-NMCA-134, ¶¶ 11-12. As discussed earlier, Plaintiff did take some actions prior to Defendant's filing of the motion (i.e., alerting Defendant of his potential eligibility for the remedial plan and finding new counsel), and Plaintiff undoubtedly took significant actions following the filing of the motion. The district court's dismissal of Plaintiff's complaint with prejudice under these circumstances amounted to an abuse of discretion in light of the policies behind Rule 1-041(E) and Plaintiff's demonstration of willingness to promptly move its case forward to a final resolution. *See Sewell*, 1982-NMCA-017, ¶ 38 ("Discretion must be used in conformity with the spirit of the law which is but served by giving litigants a chance to be heard when possible.").

{17}    As a final matter, we note that Defendant has not shown any prejudice by this delay. He has been living in the property for almost a decade without making a mortgage or rent payment. He was given two years to file a claim under the remedial plan and try to cure his mortgage delinquency and yet chose not to do so. Lastly, Defendant's liability on the loan at issue was discharged in bankruptcy on January 3, 2012, and Plaintiff is not entitled to seek a deficiency judgment against Defendant.

**{18}** Given Plaintiff's uncontroverted evidence that it informally stayed its prosecution of this case to comply with the consent order, and given Plaintiff's significant actions taken before the hearing on Defendant's motion to dismiss, we hold that the district court abused its discretion in granting Defendant's motion to dismiss with prejudice pursuant to Rule 1-041(E)(1).

**CONCLUSION**

**{19}** For the foregoing reasons, we reverse the district court's dismissal and remand for further proceedings consistent with this opinion.

**{20}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Chief Judge**

_____
**KRISTINA BOGARDUS, Judge**